IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JANE E. BASON,

                Plaintiff,               CV-09-6281-HU

    v.                         FINDINGS AND
                                   RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

HUBEL, Magistrate Judge:

**<u>INTRODUCTION</u>**

Plaintiff Jane Bason appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act.  The court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the Commissioner's decision should be affirmed.

Bason alleged she became disabled at the age of 38 in January 1992, due to fibromyalgia, chronic pain, low thyroid,

temporomandibular joint ("TMJ") disorder, depression, chronic sinus infection, spastic colon, compound fracture of the spine, tinnitus, anxiety, and vertigo.  Admin. R. 85, 103.  Bason satisfied the insured status requirements for Title II through September 30, 2008.  *Id.* at 87.  She must establish that she was disabled on or before that date to prevail on her claim.  42 U.S.C. § 423(a)(1)(A).  *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. 404.1520.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  He found Bason's ability to work limited by fibromyalgia, hypothyroidism, and irritable bowel syndrome.  Admin. R. 13-14. The ALJ found that, despite these impairments, Bason retained the residual functional capacity ("RFC") to engage in light work as defined in the regulations.  *Id.* at 15.  *See* 20 C.F.R. 404.1567(b).

Based on the testimony of the vocational expert ("VE"), the ALJ found Bason's functional limitations did not preclude the activities required to perform her past work as a general clerk, office helper, receptionist, and data entry clerk.  Admin. R. 18. Accordingly, the ALJ concluded that Bason failed to establish she was disabled before her insured status expired.  *Id.*

## **STANDARD OF REVIEW**

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record and the court must defer to the rational findings in the Commissioner's decision even if evidence exists to support another rational interpretation of the record. *Id.; Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## **CLAIMS OF ERROR**

Bason contends the ALJ failed to assess her RFC accurately and elicited testimony from the VE based on assumptions that did not reflect her true functional limitations. Specifically, Bason contends the ALJ improperly found she did not have significant limitations in the mental functions required for basic work-related activities, discredited her statements and the lay witness statements, and discounted the medical opinions of John Ladd, M.D., and Terri Robinson, M.D.

## **DISCUSSION**

### I.   **Medical Evidence**

Although Bason alleged disability beginning in 1992, she failed to produce medical evidence of her condition before 1998.

In August 1998, Bason initiated care with John Ladd, M.D., a rheumatologist. Bason said she had been diagnosed with fibromyalgia six or seven years earlier, but functioned fairly well on her prescribed medication regimen, which included muscle relaxers and anti-depressants. Dr. Ladd continued her prescriptions and recommended that she increase her activity level with regular exercise. Admin. R. 248-49.

In June 1999, Bason reported neck discomfort from a motor vehicle accident the preceding March. Diagnostic imaging showed a minimal compression of one thoracic vertebra which predated the motor vehicle accident. Dr. Ladd prescribed a nonsteroidal anti-inflammatory medication for her neck pain. In October 1999, Bason reported fatigue and diffuse discomfort. Her physical examination was unremarkable. Dr. Ladd prescribed an increase in her antidepressant dosage. *Id.* at 245-46, 274.

At routine followup examinations in June and October 2000, Bason said she was doing reasonably well with increased activity. Her physical examinations were unremarkable and Dr. Ladd noted she appeared healthy. *Id.* at 241-42.

During 2001, Bason was treated for a pulmonary infection and two episodes of earache. *Id.* at 230, 235-37, 293. In addition, she had fibromaylgia followup examinations in January and October. In January, she said she had felt pretty well for several months, but had a new ache in the right lower quadrant. Dr. Ladd's

physical examination remained unremarkable and he again urged her to increase her activity. *Id.* at 238. At the October followup, Bason said she had worked four days a week over the summer, but engaged in little activity otherwise. Her physical examination was unremarkable except some mild diffuse tenderness to palpation. *Id.* at 231-32.

At her June 2002 followup, Bason continued to work four days a week in a photography shop. Her physical examination remained generally unremarkable. Dr. Ladd again urged her to increase activity by walking three times per week. *Id.* at 227. At her followup in December 2002, Bason said she had been fairly well for six months, but had some gastrointestinal complaints. Her physical examination was unremarkable. An x-ray showed mild degeneration in her right knee. *Id.* at 224, 273.

In June 2003, at her routine six-month followup, Bason said she continued to do well, remaining more active and working four days a week. Her physical examination was normal except she had a sinus infection. *Id.* at 222. In September 2003, Bason complained of intermittent right quadrant abdominal pain, but her physical examination and diagnostic imaging were normal. *Id.* at 221, 273. In November 2003, Bason reported depression and Dr. Ladd increased her Prozac prescription. *Id.* at 220. At her annual followup in December 2003, Bason reported that her depression was improved, but she had increased fatigue over the preceding couple of months. Dr.

Ladd noted that she appeared healthy and her examination was unremarkable. *Id.* at 219.

In February 2004, at her followup with Dr. Ladd, Bason said she had been doing fairly well, was walking three times per week, and her depression had improved. Her physical examination was unremarkable, and Dr. Ladd reported normal results on diagnostic imaging of the hip, a colonoscopy, and a pelvic ultrasound. *Id.* at 218, 299. In May 2004, Bason complained of increased stress with her children and associated increased fatigue. Her physical examination remained unremarkable and Dr. Ladd encouraged her to increase her activity level. *Id.* at 217. At her routine followup in August 2004, Dr. Ladd obtained normal results on physical examination, but Bason reported increased myalgias and arthralgia symptoms and anxiety related to a June motor vehicle accident. Dr. Ladd recommended counseling for this anxiety. *Id.* at 215. Bason said she was still working several days a week. In October 2004, Bason reported discomfort in her neck and upper back since the June motor vehicle accident. Dr. Ladd's physical examination was unremarkable. *Id.* at 214.

In January 2005, Bason received immediate care for a headache. Her physical examination and a CT scan of the head were negative. *Id.* at 276, 287. Bason complained to Dr. Ladd of increased fibromyalgia symptoms at night and he prescribed pain medication. Bason reportedly joined a group for exercise five or six days per

week.  Dr. Ladd's physical examination remained unremarkable except for obesity.  He noted that she appeared healthy and had no signs of abnormality in the joints.  *Id.* at 213.  In March 2005, Bason reported a return of gastrointestinal symptoms.  *Id.* at 212-13. Dr. Ladd noted earlier evaluations including a negative sigdmoidoscopy, a negative pelvic ultrasound, and a completely normal examination by Terence Hill, M.D.  *Id.* at 181-83.  In June 2005, an abdominal CT scan and stool samples were negative for abnormalities.  *Id.* at 195-98.  In September 2005, Dr. Hill performed an endoscopy procedure in which the esophagus and stomach appeared normal.  Biopsies of the esophagus and stomach lining were benign.  He removed a small colon polyp and suggested a followup after three years with a colonoscopy.  *Id.* at 188, 191-93.  During 2005, Bason also had a lesion removed from the side of her nose and received treatment for a twisted knee.  *Id.* at 207, 284-85, 299.

In January 2006, at her annual fibromyalgia followup, Bason said her symptoms had been fairly well controlled for several months.  She had quit her job and felt less stress. Dr. Ladd's physical examination was unremarkable.  *Id.* at 205-06.

Bason filed her disability claim in March 2006.  *Id.* at 87. She told Dr. Ladd she had not felt well and with decreased energy for a month.  Dr. Ladd's physical examination was normal.  He noted she was probably experiencing an exacerbation of fibromyalgia symptoms.  *Id.* at 204.  Bason then experienced an episode of abrupt

lightheadedness while walking on a treadmill.  Basan was evaluated
with an MRI study, physical examination, and EKG, all of which were
normal.  *Id.* at 202-03, 281.  In April 2006, Bason complained of
shoulder pain and Dr. Ladd gave her steroid injection.  *Id.* at 358.

In May 2006, Terri Robinson, M.D., performed a consultative
physical examination.  Bason reported a history of whole-body pain
since high school with a fibromyalgia diagnosis in 1992.  Her
medications did not completely relieve the pain.  She claimed
irritable bowel syndrome since childhood.  She reportedly quit
working in December 2005 because the commute required excessive
driving.  She was able to do laundry, light housekeeping, use a
computer, crochet, embroider, and watch television.  On physical
examination, Dr. Robinson noted Bason was tender at all 18
fibromyalgia trigger points.  She did not report results for
control points.  The examination was otherwise normal.  Dr.
Robinson opined that Bason could stand and walk for a total of less
than six hours in a day due to mildly decreased strength in the
legs and mild range of motion limitations in the hips and lower
spine.  She opined Bason could sit for a total of six hours in a
day.  She estimated Bason could lift up to 10 pounds frequently and
15 pounds occasionally.  *Id.* at 303-04.

In June 2006, Douglas Smyth, Ph.D., performed a consultative
psychodiagnostic evaluation.  He found Bason had depression which
did not meet the diagnostic criteria for Major Depressive disorder

and a personality disorder with histrionic features.  He was unable to rule out an undifferentiated somatoform disorder.  Bason told Dr. Smyth she had quit working for reasons unrelated to mental function.  For example, she quit the job she had worked the longest so that she could stay home to raise children without depending on childcare.  Bason reportedly engaged in adequate and successful social activities and a wide range of independent activities of daily living. *Id.* at 305-10.

In June 2006, Peter LeBray, Ph.D., reviewed Bason's medical and psychological records and opined that they supported diagnoses of a depressive disorder and a personality disorder, but that these conditions did not impose significant limitations on Bason's ability to perform basic work activities.  He opined that Bason had demonstrated no restrictions in her activities of daily living, mild limitation in social functioning, and mild limitations in concentration, persistence, or pace.  *Id.* at 312, 315, 319, 322.

At her followup with Dr. Ladd in June 2006, Bason admitted she had not been active physically.  Her physical examination remained unremarkable.  Dr. Ladd again urged Bason to increase activity. *Id.* at 357.  In August 2006, Dr. Ladd wrote a letter to Bason's attorney explaining that limitations caused by fibromyalgia cannot be measured objectively and must be based on the subjective complaints of the patient.  He explained further that limiting activity would not relieve fibromyalgia symptoms.  He opined that

Bason would be capable of sedentary work most days. *Id.* at 339. Dr. Ladd completed a worksheet indicating the functional limitations Bason claimed, which included lifting of ten pounds occasionally and five pounds frequently, standing and walking for a total of two hours in a workday, and sitting for a total of four hours in a workday. *Id.* at 340-41.

In December 2006, Bason established primary care with Celso Gangan, M.D., after relocating. Bason complained of fibromyalgia, headache, sinusitis, low blood pressure, and irritable bowel syndrome. Dr. Gangan's physical examination was unremarkable for abnormalities. He started a prescription for Lyrica, a medication for neuropathic pain, which proved effective. Dr. Gangan obtained bone density studies, which were normal. *Id.* at 379-80, 392, 409.

In January 2007, Bason endorsed multiple tender points in her back. Dr. Gangan's physical examination was otherwise unremarkable. Dr. Gangan obtained normal results on laboratory tests for TSH. He referred Bason to participate in an aquatic exercise program. *Id.* at 391-92, 406.

In April 2007, Dr. Gangan saw Bason for complaints of stress incontinence, fibromyalgia, sleep difficulty, and right shoulder pain. His physical examination was unrevealing except for mild pain during range of motion testing of the right shoulder. Dr. Gangan administered a steroid injection, adjusted medications, and gave Bason a referral to a urologist. *Id.* at 387-90.

A urology evaluation revealed a mild cystocele.  *Id.* at 373.
A followup cystoscopy was negative.  The urologist prescribed
pelvic floor exercises to treat Bason's symptoms.  *Id.* at 359.

In July 2007, diagnostic imaging of the upper gastrointestinal
tract was normal.  *Id.* at 402.  In November 2007, Bason complained
of increased achiness and pain in the right shoulder.  Dr. Gangan
obtained generally benign findings on physical examination.
Laboratory results for rheumatoid factor and TSH were normal.  Dr.
Gangan changed Bason's antidepressant medication from Prozac to
Cymbalta and injected her right shoulder with a steroid.  *Id.* at
381-82, 398, 400.

In January 2008, Bason complained of a sinus infection and
feelings of depression due to financial difficulties and her
husband's loss of his job.  On physical examination, Dr. Gangan
noted that Bason endorsed multiple tender points on her back.  He
gave her medication for her sinus infection and changed her
antidepressant medication. Laboratory results for TSH were normal.
*Id.* at 376-77, 395.

In April 2008, Bason visited the emergency room for a cough
and fever.  Chest x-rays and laboratory tests were normal.  She was
treated with an albuterol inhaler.  *Id.* at 423, 431.  In June 2008,
Bason complained of stress due to her husband's unemployment and
ongoing dyspnea.  Dr. Gangan ordered pulmonary function tests,
diagnostic imaging, and an EKG, all of which were normal.  *Id.* at

421, 438-39.   In August 2008, Bason complained of increased depression due to financial problems.  She was experiencing daytime drowsiness, but declined to try a CPAP device.  *Id.* at 472.

This was the extent of the medical record at the time Bason's insured status under the Social Security Act expired on September 30, 2008.

## II.  **Mental Impairments**

Bason contends the ALJ erred by failing to find severe functional limitations attributable to her mental condition. The claimant bears the burden of establishing that she suffers from a medically determinable impairment and that the impairment affects her ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  The claimant must provide medical evidence showing that she has an impairment and how severe it is.  20 C.F.R. 404.1512(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The ALJ found Bason had established that she intermittently exhibited mild symptoms of situational depression and anxiety associated with stress, financial difficulties, and her living situation.  Admin. R. 14.  He found her mental condition did not cause more than minimal limitation in her ability to perform basic mental work activities.  *Id.* at 15.

These findings are supported by substantial evidence in the record. In December 1998, Bason complained of stress when her

husband changed jobs requiring her family to relocate.  Dr. Ladd prescribed Prozac.  *Id.* at 247-49. In November 2003, Bason reported an increase in depression.  *Id.* at 220.  Dr. Ladd increased her dosage of Prozac, and her symptoms reportedly improved. *Id.* at 218, 219.  In August 2004, Bason appeared anxious and depressed and told Dr. Ladd this was associated with a recent motor vehicle accident. *Id.* at 215.  In April 2007, Bason reported an increase in stress due to deaths in the family, problems with her daughters, and worry about her parents.  Dr. Gangan adjusted her antidepressant medications. *Id.* at 389-90. In January 2008, Bason told Dr. Gangan she felt depressed because of financial woes when her husband lost his job.  *Id.* at 376-77. Her feelings of depression continued during 2008 while her husband remained unemployed.  *Id.* at 438, 472.

    This record supports the ALJ's conclusion that Bason's depression was intermittent, situational, and mild.  The treatment notes do not include any indication from treating physicians that Bason's depression imposed functional limitations.  The treatment notes do not even include a subjective claim by Bason of any functional limitation from depression.  The ALJ pointed out that Bason worked in a photography shop through 2005 without ever complaining to any physician about functional limitations from mental impairments, and stopped working for reasons unrelated to her mood.  *Id.* at 14, 307.

13 - FINDINGS AND RECOMMENDATION

Bason argues that the consultative evaluation Dr. Smyth performed in June 2006 establishes severe functional limitations. She argues that it shows her ability to converse with others is impaired. Dr. Smyth found her interpersonal skills intact and she was pleasant and open in conversation, although her presentation was strained by loquaciousness. *Id.* at 307, 309. She claimed problems with depression and anxiety, but Dr. Smyth found this was not reflected in her mood or in her broad and appropriate affect during the evaluation. *Id.* at 309.

The ALJ considered Dr. Smyth's consultative evaluation and concluded that it showed no more than mild restrictions in any of the broad categories of function used to evaluate disability claims. *Id.* at 15. This conclusion was consistent with the findings of Dr. LeBray, the psychological expert who reviewed the entire case file and found it did not show severe mental impairments. *Id.* at 312-22.

The ALJ's conclusion is based on inferences reasonably drawn from the record as a whole. Even if Dr. Smyth's evaluation could be interpreted in a manner more favorable to Bason, the court must defer to the rational findings of the Commissioner and may not substitute a different interpretation of the evidence. *Andrews*, 53 F.3d at 1039.

### III. **Credibility Determination**

As indicated previously, Bason alleged disability beginning in January 1992, due to fibromyalgia, hypothyroidism, TMJ, depression, anxiety, chronic sinus infection, spastic colon, tinnitus, vertigo, and a compound fracture of the spine.  Admin. R. 103.  She alleged these conditions cause pain, memory loss, and difficulty concentrating, and she must alternate sitting and standing every 15 minutes.  *Id.*

At the hearing, Bason testified that she worked part time in a photography shop until November 2005.  She quit working there because she could not do the required standing, sitting, and computer work, and because the commute cost more than she earned due to the distance from her home.  *Id.* at 29.  She missed about half her scheduled work days due to stiffness or inability to focus.  *Id.* at 33.  The shop was operated by family members who accommodated her missed days and limitations.  *Id.* at 30.

Bason testified that she could not work because she is unable to remember or focus on details, requires unscheduled bathroom breaks, cannot sit for more than five minutes without excessive back pain, cannot use her hands and wrists without cramping, and spends about six hours per day lying down to relieve leg pain and dizziness.  *Id.* at 30-32.

The ALJ found Bason able to perform the full range of light work, including the ability to sit and stand or walk for a total of

six hours each in a workday. *Id.* at 15. He rejected her assertions of limitations exceeding this RFC, finding her subjective reporting about the intensity, persistence, and limiting effects of her symptoms not credible. *Id.* at 16, 17.

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). In assessing credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work history, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *5. An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ considered the proper factors. He pointed out that the progress notes of Bason's treating physicians did not reflect findings of functional limitations. Dr. Ladd's progress notes repeatedly indicated Bason told him she was doing reasonably well with her fibromyalgia symptoms. Admin. R. 205, 218, 222, 224, 234, 238, 241. The progress notes also reflect she engaged in regular exercise and activities that were inconsistent with her assertions

of being incapable of light activity for more than a few minutes at a time. For example, she reportedly used an exercise bike and walked regularly, up to a mile and a half four times per week. *Id.* at 205-206, 218, 227, 234, 357, 384. The ALJ reasonably found these reported activities inconsistent with Bason's assertion that she could walk only a quarter mile on a treadmill or three to four blocks occasionally. *Id.* at 129. Dr. Ladd repeatedly urged Bason to be even more active and her symptoms reportedly lessened when she complied with this advice. The progress records are devoid of any mention of missed work, special accommodations at work, or symptoms requiring her to lie down six hours a day.

The ALJ also considered the notes of the examining physicians. The ALJ found that the activities she described during those evaluations were inconsistent with the limitations she claimed. For example, Bason told Dr. Smyth she grooms and dresses herself without assistance; prepares meals using the kitchen appliances without assistance or physical difficulty; cleans up after meals bussing and washing dishes; washes laundry without assistance; drives a car; does the grocery shopping with her husband; manages the household bank account; uses a computer and operates email, word processing, and internet protocols. For fun she rides a bicycle, embroiders or crochets daily, and enjoys watching television or movies and listening to music. *Id.* at 307-08. She did not mention to Dr. Smyth or Dr. Robinson that lying down for

several hours was part of her daily routine. Inconsistencies
between the claimant's testimony and her demonstrated conduct
support an adverse inference as to credibility. *Light v. Soc. Sec.
Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found Dr. Smyth's mental status examination and memory
testing inconsistent with Bason's assertions of difficulty focusing
and remembering.  There was no indication of memory difficulty and
her attention during the evaluation was average.  In addition, she
showed no signs of unusual fatigue during her evaluation.  *Id.* at
309.  Such a conflict between the objective medical evidence and
the claimant's subjective assertions can undermine credibility.
*Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.
1999).

The ALJ considered Bason's work history, finding it
inconsistent with the limitations she claimed.  He noted that Bason
worked every year from the alleged onset of disability in 1992
until November 2005.  None of these jobs ended because of her
alleged health problems.  For example, Bason told Dr. Robinson she
quit working at the photography studio because of the commute, not
the physical or mental requirements of the work activities
involved.  *Id.* at 300. As described previously, she told Dr. Smyth
she quit other employment to stay home with her children.  *Id.* at
306.  When a claimant stops working for reasons unrelated to her
asserted impairments, an ALJ may properly draw an adverse inference

as to the credibility of the claimant's assertions.  *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

The ALJ also relied on Bason's failure to provide evidence from the family members who employed her at the photography studio. She was in a position to obtain evidence from these presumably sympathetic witnesses to corroborate her assertions regarding poor attendance and special accommodations.  Her failure to produce that evidence reasonably supports an adverse inference as to the credibility of those claims.

The ALJ also found the activities described in the lay witness statement of Bason's husband inconsistent with Bason's testimony. Bason's husband indicated that Bason performs typical household chores such as housecleaning, laundry, meal preparation, ironing, shopping, and craft work.  *Id.* at 120-21.  Notably, Bason's husband did not indicate Bason spent significant portions of each day lying down.

The ALJ's credibility determination is supported by inferences reasonably drawn from the record.  His decision provides an adequate basis for the court to conclude that he did not discredit Bason's subjective statements arbitrarily.  *Orteza*, 50 F.3d at 750; *Batson*, 359 F.3d at 1193.  Although the evidence is susceptible to an interpretation more favorable to Bason, the ALJ's rational findings must be upheld.  *Ryan v. Commissioner,* 528 F.3d 1194, 1198 (9th Cir. 2008).

IV.  **Lay Witness Statement**

Bason contends the ALJ improperly discredited the lay statements of her husband.  An ALJ must consider lay witness testimony concerning a claimant's ability to work.  *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness.  *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

Here the ALJ relied on portions of the lay witness statement that indicated Bason was not as limited as she claimed.  For example, as noted above, Bason's husband said she cleaned house, washed laundry, prepared meals, washed dishes, ironed clothing, shopped, drove a car, walked, and rode a bicycle on a regular basis.  She engaged in hobbies of reading, making crafts, sewing, watching television, riding a bicycle, and walking.  Admin. R. 120, 123-24.  The ALJ credited these statements and found them inconsistent with the limitations Bason alleged.  *Id.* at 16.

Bason argues the ALJ failed to accept certain details in the lay witness statement.  For example, Bason's husband said that she gets off task frequently and does not handle stress or changes in routine well.  The ALJ did not discuss each limitation the lay

witness mentioned in precise detail, but he provided a reasonably accurate summary of the lay witness statement and demonstrated that he did not arbitrarily disregard it without consideration.  The additional limitations suggested in the lay witness statement were vague and lacked specificity with respect to how they might affect Bason's ability to work.  The lay witness did not identify work-related activities that Bason could not do.  Accordingly, it does not appear that the ALJ discredited the statements in assessing Bason's RFC.  Because he did not disregard or discount the lay witness statement, the ALJ did not err by failing to provide an explanation for doing so.

### V.   __Medical Source Statements__

Bason contends the ALJ erroneously discounted the opinions and conclusions of Drs. Ladd and Robinson.  An ALJ must explain with clear and convincing reasons why he has chosen to reject a treating or examining physician's opinion that is not contradicted by another physician.  *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the opinion is contradicted by other physicians, the ALJ must explain with specific, legitimate reasons.  *Thomas*, 278 F.3d at 957.  The reports of Drs. Ladd and Robinson differ in the functional limitations they predicted; both are contradicted in some respects by objective medical findings regarding Bason's cardiovascular capacity.  Accordingly, the ALJ was required to

provide an explanation with specific, legitimate reasons for discounting portions of these opinions.

Dr. Ladd followed Bason for fibromyalgia and primary care, from August 1998 until June 2006. His progress notes were summarized previously. In August 2006, Dr. Ladd wrote to Bason's attorney explaining that fibromyalgia is primarily a subjective symptomatic diagnosis and that the limitations it causes must be based on the patient's subjective report of symptoms. Admin. R. 339. Dr. Ladd completed a questionnaire which reflected this by indicating Bason's functional limitations as she subjectively reported them to him. Id. at 340. The questionnaire indicated Bason could lift ten pounds occasionally and five pounds frequently, stand and walk for two hours during an eight hour workday with normal breaks, and sit for four hours during an eight hour workday with normal breaks. *Id.*

The ALJ found these limitations inconsistent with Dr. Ladd's treatment records. *Id.* at 17. In progress notes, Dr. Ladd generally indicated Bason was doing reasonably well. The notes do not reflect subjective reports in which Bason said she had difficulty standing, walking, or sitting or that she would not be able to sustain these activities sufficiently to complete a normal work day. Indeed, the notes suggest that Bason engaged in regular exercise, including walking and bicycle riding, and reportedly did better when she followed medical advice to increase her activity

level.    In the course of her treatment, Bason did not report lifting limitations in her daily activities. The ALJ could reasonably find it inconsistent that Dr. Ladd's notes did not reflect the plaintiff's self described limitations repeated in his questionnaire.

The ALJ noted that Neal Berner, M.D., a reviewing medical consultant, considered Bason's entire medical record and found it revealed a pattern of relative stability when Bason engaged in regular moderate exercise. *Id.* at 17, 350. The medical records reflected that she engaged in activities, including work, walking, and bicycling, on a regular, if not daily basis. Objective testing showed good cardiovascular conditioning consistent with an active person capable of the full range of light work. *Id.* at 344, 350.

Dr. Berner identified credibility issues. Bason's cardiovascular conditioning contradicted her claim that she spent large portions of every day lying down. In addition, he noted that Bason apparently exaggerated claims of a compound spinal fracture, chronic diarrhea, vertigo, and pulmonary conditions, which were unsupported by objective findings. *Id.* at 350. The ALJ reasonably inferred that Bason's lack of credibility and histrionic personality features suggested she overstated her subjective complaints and led Dr. Ladd to reach overly restrictive functional limitations in his questionnaire.

As Dr. Ladd said in his letter to counsel, fibromyalgia by its nature eludes measurement by objective evidence and the limitations it causes must be assessed by subjective reports from the patient. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Under such circumstances, the credibility of the claimant is critically important. Here, the ALJ found Bason's reports undermined by her lack of credibility. Admin. R. 17. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan* v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ considered Dr. Robinson's evaluation and accepted much of it. For example, the ALJ accepted Dr. Robinson's findings that Bason's limitations in sitting, standing, and walking did not preclude her from completing a normal eight hour work day. The ALJ did not accept Dr. Robinson's conclusion that Bason was limited to less than the full range of light work. Dr. Robinson opined that Bason could lift 15 pounds occasionally, less than the 20 pounds required for light work, due to mildly decreased strength in the upper extremities. Dr. Robinson also found Bason had an unspecified limitation in reaching due to a mild decrease in the range of motion of her shoulder. Admin. R. 303.

These findings were endorsed by Richard Alley, M.D., the first reviewing medical consultant, who found Dr. Robinson's report and

Bason's subjective complaints supported an RFC limited to sedentary work. *Id.* at 333. The ALJ considered Dr. Robinson's report and the conclusions of Dr. Alley, but was persuaded by the opinion of Dr. Berner who had the benefit of additional information, including the objective findings regarding Bason's excellent cardiovascular conditioning. *Id.* at 17-18.

Under the circumstances, the ALJ reasonably concluded that Dr. Robinson's and Dr. Alley's opinions, like that of Dr. Ladd, were premised on subjective reporting from Bason that was not reliable. Those opinions were no more reliable than the subjective statements upon which they where based. *Tonapetyan*, 242 F.3d at 1149. The ALJ properly discounted portions of their opinions in favor of Dr. Berner's opinion which was well reasoned and consistent with the record as a whole.

In summary, although a reviewing physician's opinion is not generally entitled to as much weight as the opinions of treating or examining physician, under the present circumstances, where Dr. Ladd's and Dr. Robinson's opinions are based to a significant extent on subjective reporting that is not trustworthy, where no treating source has imposed limitations on Bason's activities based on her alleged impairments, and where Dr. Berner had the benefit of additional medical information and reasonably accounted for all the medical evidence in the record, it was reasonable for the ALJ to

discount the conclusions of Drs. Ladd and Robinson in favor of Dr. Berner's conclusions.

The ALJ explained how he resolved the conflicts in these medical opinions based on inferences reasonably drawn from the record. Accordingly, the court may not substitute a different view of the evidence even if it is susceptible to a rational interpretation more supportive of Bason's disability claim. *Andrews v. Shalala*, 53 F.3d at 1039.

## VI. <u>Vocational Evidence</u>

The ALJ elicited testimony from the VE based on the RFC assessment described previously. The VE testified that a person having Bason's vocational factors and RFC could perform the work activities required in her former employment as a general clerk, office helper, receptionist, and data entry clerk. Admin. R. 46-47. Bason's only objections are that the ALJ's hypothetical assumptions did not include all the functional limitations identified in her subjective statements, her husband's lay witness statement, and the medical source statements of Drs. Ladd, Robinson, and Alley.

The ALJ considered all the evidence Bason produced and elicited testimony from the VE based on the functional limitations supported by the record as a whole. The ALJ was not required to incorporate additional limitations based on evidence he properly discounted. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240

F.3d 1157, 1164-65 (9th Cir. 2001). Bason's objections to the ALJ's evaluation of the evidence cannot be sustained for the reasons already given.

## RECOMMENDATION

Based on the foregoing, the ALJ's decision that Bason did not prove disability and is not entitled to disability insurance benefits under Title II of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 6, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due December 23, 2010. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this  16th  day of November, 2010.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge